**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE HOPI TRIBE, a federally
recognized Indian Tribe,
  *Petitioner*,

v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY,
  *Respondent*,

SALT RIVER PROJECT
AGRICULTURAL
IMPROVEMENT AND POWER
DISTRICT; NAVAJO NATION;
CENTRAL ARIZONA WATER
CONSERVATION DISTRICT;
GILA RIVER INDIAN
COMMUNITY,
  *Respondents-Intervenors.*

No. 14-73055

OPINION

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted November 18, 2016
San Francisco, California

Filed March 20, 2017

Before:  Mary M. Schroeder, Stephen S. Trott,
and John B. Owens, Circuit Judges.

Opinion by Judge Schroeder

**SUMMARY**[*]

**Environmental Law**

The panel denied a petition for review by The Hopi Tribe challenging the Environmental Protection Agency's federal implementation plan under the Clean Air Act for the Navajo Generating Station in Arizona, which concerned the production of haze that hinders clear views of the Grand Canyon.

The federal implementation plan was promulgated pursuant to the EPA's Tribal Authority Rule that governs the Clean Air Act's requirements on tribal land, and the Hopi Tribe objected to a proposed closure of the Station in 2044.

The panel held that the Hopi Tribe's exclusion from a Technical Working Group, which was a group of stakeholders that developed the proposed Rule, did not violate a duty on the part of the government to consult with the Tribe.  The panel held that the record showed that the EPA did consult with the Hopi Tribe during the rulemaking process.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel rejected the Tribe's contention that the EPA failed to analyze each of the five BART factors – the "best available retrofit technology" to reduce emissions from the Station. The panel held that because the Technical Working Group proposal was an alternative to BART, there was no error in the EPA not analyzing the BART factors under the Technical Working Group alternative.

## COUNSEL

Anne E. Lynch (argued) and Michael D. Goodstein, Hunsucker Goodstein PC, Washington, D.C.; David M. Waterman, Catherine Wright, and Karen Pennington, The Hopi Tribe, Kykotsmovi, Arizona; for Petitioner.

Jennifer S. Neumann (argued), Attorney, Appellate Section; Daniel R. Dertke, Attorney, Environmental Defense Section; John C. Cruden, Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; for Respondent.

Z.W. Julius Chen (argued), Akin Gump Strauss Hauer & Feld LLP, Washington, D.C.; Aaron M. Flynn, Norman W. Fichthorn, and William L. Wehrum, Hunton & Williams LLP, Washington, D.C.; for Respondents-Intervenors.

**OPINION**

SCHROEDER, Circuit Judge:

The Hopi Tribe petitions for review of the Environmental Protection Agency's ("EPA") federal implementation plan ("FIP") under the Clean Air Act ("CAA") for the Navajo Generating Station ("Station") in Arizona. The station is operated by a consortium of utilities led by the Salt River Project and under a lease from the Navajo Nation that expires in 2019. It is a coal-fired plant that uses coal for which the Hopi Tribe receives royalties. The FIP was promulgated pursuant to the EPA's Tribal Authority Rule that governs CAA requirements on tribal lands. The Hopi contend the Tribe was not adequately consulted about its interests before the plan was promulgated and object to a proposed closure of the Station in 2044.

Before us as well are petitions from environmentalists. They claim the continued operation of the Station harms their environmental interests. We deny the Hopi's petition and we also deny the environmentalists' petitions in a related opinion filed today. *See Yazzie v. Environmental Protection Agency*, — F.3d —, Nos. 14-73100, 14-73101, 14-73102 (9th Cir. 2017).

The background of this dispute is explained more fully in our accompanying opinion in *Yazzie*. This FIP resulted from the 1990 CAA amendments that expanded the CAA to combat regional haze. Clean Air Act, Amendments, Pub. L. N. 101-549, 104 Stat. 2399 (1990). A subject of particular concern in the operation of the Station is the production of haze that hinders clear views of the Grand Canyon. The Station is a major source of emissions that implementation

plans promulgated pursuant to the CAA must reduce. The reductions must be made by identifying the best available retrofit technology ("BART") and installing it or better technology, known as a BART alternative. 40 C.F.R. § 51.308(e); *see also Cent. Ariz. Water Conservation Dist. v. EPA*, 990 F.2d 1531, 1543 (9th Cir. 1993).

The EPA issued the final rule for the NGS in August 2014 after a process that took over five years, beginning with an Advance Notice of Proposed Rulemaking ("ANPRM") in 2009. 74 Fed. Reg. 44,313 (Aug. 28, 2009). The EPA specifically notified the Hopi Tribe of the ANPRM, and had multiple meetings and telephone calls with Hopi Tribal representatives. The Hopi Tribe was invited to eight group consultation sessions in Arizona, where the Hopi had the option to request individual consultation sessions. The Tribe filed a comment. EPA issued a Notice of Proposed Rulemaking in February 2013. 78 Fed. Reg. 8,274 (Feb 5, 2013.) In October 2013, the EPA issued a Supplemental Proposed Rule and Notice of Public Hearings. 78 Fed. Reg. 62,509 (Oct. 22, 2013). The proposed Rule was developed by a group of stakeholders led by the utilities that operated the Station. The group had met as a Technical Working Group ("TWG") that set an emissions cap for the future operation of the Station and required it be shut down in 2044 or when the cap was reached, whichever occurred first. The final rule, issued in 2014, was materially the same as the Supplemental Proposed Rule. 79 Fed. Reg. 46,514 (Aug. 8, 2014). The Hopi Tribe was not part of the TWG.

The pre-TWG discussions apparently were nonproductive because the interests of the Hopi were adverse to the goals of the CAA. The projected phasing out of the Station's production and its eventual closure harm Hopi economic

interests. Fifty percent of the people, including fifty-four percent of children, on the Hopi Reservation live in poverty; unemployment is around fifty percent; and thirty-five percent of homes lack a complete kitchen. Residents of the Hopi Tribe are forty times more likely than the average American to lack running water. The Station is responsible for some 1400 to 1900 Hopi jobs, about fifty to seventy percent of all employment on the Hopi Reservation.

The principal issue before us is whether the Hopi's exclusion from the TWG negotiations violated a duty on the part of the government to consult with the Tribe. The United States has a general trust relationship with the Indian tribes. *See Seminole Nation v. United States*, 316 U.S. 286, 296 (1942). The Hopi ask us to treat this as a duty to consult, stemming from the trust relationship, and binding on the United States as a single entity. No authority allows us to do that, however, and agencies are required to be named individually as parties to a lawsuit. Fed. R. App. P. 15(a)(2)(B), (C). The record shows that the EPA did, in fact, consult with the Hopi Tribe throughout the rulemaking process. The Tribe was invited to group consultations, there was a hearing on their reservation and all parties were aware at all times of the Hopi's economic interests. Consultations took place before and after EPA considered the TWG Agreement. Therefore, regardless of the scope of enforceability of any duty to consult on part of the EPA, the EPA surely complied.

While the EPA did not participate in the TWG negotiations, the Department of Interior ("DOI") did. The DOI was familiar with the adverse impact of mine closures on Hopi interests. The Hopi, however, did not name the DOI as a party to this petition. Therefore, even if the DOI violated

some independent duty to consult with the Hopi Tribe because the Tribe was excluded from the TWG negotiations, that issue is not properly before us in this case. To the extent the Hopi contend the trust relationship required the United States to put their interests above all others, we have rejected that position. *See Gros Ventre Tribe v. United States*, 469 F.3d 801, 811 (9th Cir. 2006) (holding that the United States does not have to regulate off-reservation resources in a manner consistent with a tribe's best interests so long as it complies with general regulations and statutes).

The record also belies the Hopi's contention that the EPA failed to analyze each of the five BART factors. Under the CAA, the EPA is required to analyze five factors when determining BART. 42 U.S.C. § 7491(g)(2). The EPA did so when determining BART for the NGS. It did not, however, analyze these factors when evaluating the TWG proposal. This was not contrary to law. By the CAA's own terms, the five factors are required only for BART. BART alternatives, such as the TWG proposal, are governed separately by a regulation that requires them to achieve "greater reasonable progress" than BART. 40 C.F.R. § 51.308(e)(2); *see also Yazzie*. These regulations do not require that the BART factors be evaluated when analyzing a BART alternative. We have previously upheld the use of BART alternatives governed by regulation. *See Cent. Ariz. Water Conservation Dist.*, 990 F.2d at 1543. Because the TWG proposal was an alternative to BART, there was no error in the EPA not analyzing the BART factors under the TWG alternative.

The Petition for Review is **DENIED**.